## LAND CONTRACT SIGNED BY MANAGER OF A CORPORATION HELD VALID.

Circuit Court of Cuyahoga County.

MERCHANTS INSURANCE COMPANY OF NEW JERSEY v. MARCUS M. BROWN AND THE MAYFIELD HEIGHTS REALTY CO.

Decided, February 21, 1905.

*Corporate Entity, When Disregarded—Insurance of a Land Contract a Violation of Warranty of Unconditional and Sole Ownership.*

Where the owner of a real estate allotment, who had organized a corporation to hold title thereto but in effect owned all of the capital stock of the corporation himself and was the president and sole manager of its business, entered into a land contract with a third party whereby he personally contracted to convey a certain parcel in the name of the corporation, stating in the application that it was the unconditional and sole owner of the property, a loss having occurred: *Held*, That the fiction of corporate entity would be disregarded and the land contract signed by the president-manager would be treated as the contract of the corporation, and that the unconditional and sole ownership was not in the corporation but in the vendee under the land contract.

*Garfield, Howe & Westenhaver,* for plaintiff.
*Horr & Lowenthal,* contra.

HENRY, J.; MARVIN, J., and WINCH, J., concur.

This is an appeal from a decree of mortgage foreclosure. The evidence and the undisputed averments of the pleadings show that the defendant, Marcus M. Brown, being the owner of a real estate allotment, organized a corporation, the Mayfield Heights Realty Company, defendant herein, to hold the title and facilitate the sale thereof. Of this corporation, Brown himself owned, in effect, the entire capital stock. He was the president of the corporation, and he alone managed its business. In contracting for the sale of lots Brown made contracts in his own name rather than in the name of the corporation, in order that such contracts might not cause embarrassment relative to

the mortgage indebtedness upon the property, or otherwise injuriously affect the record title by reason of their pendency, or in case of breach by purchasers.

Of this sort was a certain contract which was entered into on July —, 1899, between Brown and one Wylie for the purchase by the latter of a house and lot. Wylie entered into possession of the premises so purchased, and continued therein during all the period under consideration. In September, 1899, Brown, in the name of his corporation, took out a policy of fire insurance upon the house, stipulating that loss, if any, should be payable to the mortgagee of the premises, one Rollin C. White, as his interest might appear. No mention in the policy was made of the outstanding contract for the sale of the premises to Wylie, but on the contrary it was stipulated that the interest of the insured in the said premises was that of "unconditional and sole ownership."

After the insurance was effected, a lean-to, or shed, was built on the rear of the house, and Wylie kept therein a small amount of gasoline in a glass can partly covered with a tin envelope. The contents of this can having somehow escaped, a fire resulted from the lighting of a match by Wylie in the lean-to whereby the house was destroyed. The mortgagee, White, perfected proofs of loss; but Brown deeming that his corporation was not interested, save only to the extent of having the loss paid to the mortgagee in reduction of the mortgage debt, failed to present any proofs of loss on behalf of said corporation until after the time limited therefor in the policy had elapsed.

By the terms of the mortgage the mortgagee was confessedly not affected by this and other defenses which the insurance company urged against Brown's corporation. The insurance company therefore paid the amount of the loss to the mortgagee; but instead of permitting the same to be applied in reduction of the mortgage debt, it exacted from White, under the subrogation clause in the policy, an assignment to itself of the mortgage and debt which it secured. Brown's corporation declined to pay to the insurance company the sum alleged to be due to the latter under the mortgage as thus assigned, save only a small margin

in excess of the amount of the insurance, and thereupon this suit for foreclosure was commenced.

Brown's corporation by answer claims that the mortgage debt was extinguished, having been paid with money belonging to it when the insurance loss was adjusted. Plaintiff by reply in sists that Brown's corporation had no right to the benefit of indemnity under the policy, having violated its provisions in three particulars, namely:

*First.* In that, by the contract between Brown and Wylie, Brown's corporation had at the date of the policy ceased to be the sole owner of the insured premises.

*Second.* In the manner in which the gasoline was kept on the insured premises, as already described.

*Third.* In that the insured did not seasonably perfect its proof of loss.

Concerning the first of these particulars, the controversy hinges upon the question whether Brown's contract with Wylie qualifies the sole and unconditional ownership of the premises by Brown's corporation. If so, the latter's representation in that behalf is untrue, and renders the policy void as to it.

Was Brown's contract with Wylie such that the latter would have been entitled, upon the performance thereof on his part, to a decree against Brown's corporation in a suit for the specific performance of the contract?

In *First National Bank of Chicago* v. *Trebein Company*, 59 O. S., 316, it is held that:

"In contemplation of law a corporation is a legal entity, an ideal person, separate from the real persons who compose it. This fiction, however, is limited to the uses and purposes for which it was adopted—convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members. But the fiction can not be abused; a corporation can not be formed for the purpose of accomplishing a fraud or other illegal act under the disguise of the fiction; and when this is made to appear, the fiction will be disregarded by the courts and the acts of the real parties dealt with, as though no such corporation had been formed, on the ground that fraud vitiates everything into which it enters, including the most solemn acts of men."

In *State, ex rel* v. *Standard Oil Company*, 49 O. S., 137, it is held:

"That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded."

It was perhaps on the principles affirmed in the decisions just quoted that the Supreme Court in the case of *Bundy* v. *Iron Co.*, 38 O. S., 300, held that a mortgage upon corporate property made, through error, by the stockholders of the corporation in their own names, instead of by the corporation itself, which had received the consideration therefor, was a good equitable mortgage as against the corporation.

It follows that, in view of the relation between the two defendants here, a refusal by Brown's corporation to carry out the contract made by him with Wylie would, in case the latter were not in default, amount to a fraud by it, and that it would be effectually estopped from asserting, by way of defense to that contract, that it was not in fact a party thereto. Hence the contract must be viewed as having been to all intents and purposes made by Brown's corporation.

With a valid contract for the sale of the insured premises outstanding, can it be said that the Mayfield Heights Realty Company was the sole and unconditional owner of the premises in question? A great number of authorities have been cited to us in support of the proposition expressed in 13 Am. & Eng. Enc. of Law, 2d Edition, 234, that:

"One who is in possession of real property under contract to purchase, and is not in default in the payments provided for in the contract, is in equity the owner of the land, and hence is entitled to insure as sole and unconditional owner. This is true whether the purchaser's price has been paid or not, as, in effect, the unpaid portion of the purchase price is only an incumbrance."

*Lorrillard Fire Ins. Co.* v. *McCulloch*, 21 O. S., 176, goes almost to the same length, and in the light of that decision we

hold, that the Mayfield Heights Realty Company was not the sole and unconditional owner of the premises in question.

The authorities clearly indicate that when a policy of fire insurance contains a stipulation that the insured is the sole and unconditional owner of the premises, and the fact is otherwise, and the policy in such case is provided by its terms to be void, the courts will recognize and enforce the provision in this behalf, and deny any right of recovery, in case of loss, to the insured.

Our conclusion on this branch of the case makes it unnecessary to determine whether or not the other defenses urged by the insurance company as against the realty company are valid. We incline, however, strongly to the opinion, that the lean-to in which the gasoline was kept was an integral part of the insured premises, and that the can in which the gasoline was stored can not be considered, in any just sense of the term, to be a metallic can as required by the policy. The fact that the fire orignated in consequence of the escape of the gasoline contained in this can points forcibly to the propriety of the provisions of the policy in this behalf; since if the gasoline had been stored elsewhere, or had been contained in an unquestionably metallic receptacle, no fire, would, it is probable, have ensued.

We do not, however, pass upon the question whether this was a violation of the policy, nor upon the further question whether, in view of the fact that the mortgagee White perfected proper proof of loss, it was necessary for the Mayfield Heights Realty Company to do the same.

It was conceded in the argument that if any of the defenses urged by the plaintiff insurance company as against Brown's corporation and its right to indemnity under the policy is valid, the plaintiff is in that case properly subrogated to the rights of the mortgagee White, and can maintain this action. And we so hold.

A decree will be entered accordingly for the plaintiff.